**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **STEPHANIE CURRAN,** : | |
| : | **Case No. 12-CV-1221** |
| **Plaintiff,** : | |
| : | **JUDGE ALGENON L. MARBLEY** |
| **v.** : | |
| : | **Magistrate Judge Terence P. Kemp** |
| **WERNER CO.,** : | |
| : | |
| **Defendant.** : | |

**OPINION & ORDER**

Before the Court are Defendant Werner Company's ("Werner") July 1, 2015 Motions for Summary Judgment (Doc. 59) and to Exclude Expert Testimony of Doctors George Ritter and William Mohr (Doc. 58). The motions are fully briefed and ripe for review. For the following reasons, the Court **DENIES** both motions.

**BACKGROUND**

On December 3, 2010, Plaintiff Stephanie Curran ("Curran") stood on a Werner model FS108 8 foot Fiberglass Single Sided Stepladder. (Compl., Doc. 2, ¶ 6.) Plaintiff was helping her friends, William and Pat Barker, decorate their Christmas tree. (Pl.'s Response, Doc. 61 at 2.) William Barker purchased the ladder on September 15, 2010, about ten weeks before. (*Id.*) At the time of the accident the ladder was "brand new" and had never been used. (*Id.*) Neither William nor Pat Barker saw anyone abuse, damage, drop, or in any way alter the ladder. (*Id.* at 4.)

Plaintiff's brother, William Curran, was steadying the ladder with both hands while Plaintiff hung the decorations. (*Id.*) Mr. Curran heard a "cracking" sound before the ladder's legs "kicked out" and the ladder "just disappeared" underneath Plaintiff. (*Id.*) Mr. Curran says that the

1

ladder "collapsed on itself," leaving one of the back legs "kind of bent in" such that it "reminded [him] of a giraffe." (*Id.*)

After the ladder's collapse Plaintiff suffered lower back injuries, mental anguish, and economic loss including medical expenses and an inability to maintain gainful employment. (Doc. 2, ¶12.)

On November 30, 2012, Plaintiff filed suit in the Franklin County Court of Common Pleas. (Notice of Removal, Doc. 1 at 2.) On December 31, 2012, Defendant filed a notice of removal to this Court. (*Id.*) Plaintiff, through counsel, retained two experts to assist her case: Doctors George Ritter and William Mohr (collectively, "the experts"). They investigated the failure of the ladder and offered opinions regarding the cause of its collapse. (Doc. 61 at 4.) Dr. Mohr is a structural integrity engineer, and Dr. Ritter is an engineer focusing on composite materials. (*Id.*) Following their examination of the ladder, the experts concluded that the ladder "should be able to perform as it was designed absent 'some other imperfection or defect' in the ladder." (*Id.*) Dr. Mohr's opined further that "a crack in the corner [of the ladder] between the flange and the web of the rear rail compromised the ability of the cross brace to provide restraint." (Doc. 61 at 5.) Dr. Mohr located a crack along the interior in that very spot. (*Id.*) It is Dr. Mohr's opinion that Curran's bodyweight "shifted" after other precipitating events occurred. (*Id.*) Dr. Mohr considered alternative explanations for the ladder's failure, including Defendant's position that the ladder was tipped over on its side with the left side up when Curran fell on the left leg, (Mohr Depo., Doc. 61-5 at 6) but ultimately concluded that the accident was caused by the pre-existing crack. (Doc. 61 at 5.) He based this analysis on the crack's color, position, and condition. (*Id.*) Of particular significance to the experts was the audible "cracking" sound prior to the ladder's failure. (*Id.* at 6.) Dr. Ritter testified that "when someone reports to me that they

2

heard a crack, and then there was a failure, it's kind of like . . . it's kind of a gunshot. It's an aha thing, when it comes to composite materials." (*Id.*) The experts indicated that the sound signaled "the imminent failure of the fiberglass in the cross brace three (3) joint region, at which time the region around cross brace two (2) began failing, the rear leg collapsed, and the front to rear brace buckled." (*Id.*)

## LAW AND ANALYSIS

### I. *DAUBERT* MOTION TO EXCLUDE EXPERT TESTIMONY

#### A. Standard

Federal Rule of Evidence 702 governs the testimony of expert witnesses, and it provides that

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that prior to admitting expert evidence under Rule 702, district courts must make a preliminary assessment of "whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." 509 U.S. 579, 593-94 (1993). The Court referred to a non-exhaustive list of factors that trial courts may consider in reviewing the reliability of proffered expert testimony, including the following: (1) whether the theory or technique used by the expert can be, or has been, tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) the known or potential rate of error of the method used; (4) whether there are standards controlling the

3

technique's operation; and (5) whether the theory or method has been generally accepted within the relevant community. *Id.* In *Kumho Tire Company v. Carmichael*, the Supreme Court clarified that the reliability inquiry *Daubert* outlined covers not just scientific testimony, but also expert testimony based on—in the language of Rule 702—"technical" and "other specialized knowledge." 526 U.S. 137 (1999).

### B. Analysis

Defendant submits that the expert testimony of Doctors Ritter and Mohr fails to meet the second, third, and fourth prongs of Federal Rule of Evidence 702, i.e.: (1) that their testimony is based on insufficient facts and data; (2) that their testimony is not the product of reliable principles and methods; and (3) that their testimony is based on unreliably applied principles and methods to the facts of the case. Accordingly, Defendant asks the Court to exclude all such testimony. Alternatively, Defendant requests an evidentiary hearing to address the issues.

#### 1. *Sufficient Facts or Data*

Defendant argues that the testimony of Doctors Ritter and Mohr is not based on sufficient facts or data as required by Federal Rule of Evidence 702(b). (Doc. 58 at 6.) Defendant relies on no law beyond the text of Rule 702(b) to support this argument.

Defendant contends that the experts' testimony was premised on an improper assumption that "undermine[d] the scientific method needed to conduct an appropriate evaluation," namely that the experts were asked "to examine a ladder that had collapsed in service." (*Id.* at 6-7.) According to Defendant, the experts' conclusion rested on the presumption that the damage to the ladder "was precipitated by a failure of the ladder's components." (*Id.* at 7.) Thus, argues Defendant, "if the process begins with the presumption that a component of the ladder failed, then Plaintiff's experts would invariably conclude that the failure was the initiating event of the

4

collapse of the ladder." (*Id.*) To support this argument, Defendant relies on the following excerpt from the deposition of Dr. Mohr:

> Q	The original assignment says to examine the ladder that has collapsed in service. Is that your understanding of what your assignment was?
> A	I was to examine it, and I have provided examination as well as some assessment of the information in my examination.
> Q	So based upon the instruction or the assignment [sic], when you took this matter on, it was the presumption that the ladder failed?
> A	Yes. It was a presumption that the ladder, as is stated, collapsed during service.

(*Id.*)

Defendant argues that Dr. Ritter operated under the same faulty assumption, excerpting this from Dr. Ritter's deposition:

> Q	All right. But in -- at this point, with the information given to you, you're working on the assumption that the ladder had collapsed causing her to fall and now you're looking for an engineering reason that would account for a material failure to cause the ladder to collapse as reported; is that fair?
> A	Yes. Now, I would also add, when this conversation took place, of course I did have access to the photographs.

(*Id.*)

Defendant submits that "[t]he fact that [Drs.] Ritter and Mohr were asked to presume a component failure is contrary to the scientific method and creates circular reasoning." (*Id.*)

Defendant further contends that such an approach "does not seek to determine what caused the failure, and it produces misleading and unreliable results." (*Id.*) According to Defendant, this exchange explains the deficiency of the experts' method:

> Q	Okay. And you're not – you're not an accident reconstruction expert, we've already established that. Okay. So you're not trying to rule out some other way the accident may have occurred which would account for what damage was to the ladder; is that fair?
> A	Yes.
> Q	Okay. So you have a report to you that the ladder collapsed under use and now you're trying to determine from all the material damage that is on that

5

|   |   |   |
|---|---|---|
|   |   | ladder what would account for a collapse? |
| A |   | Yes. |
| Q |   | Correct? That is the scientific method that you're using in this particular endeavor, correct? |
| A |   | Yes. |

(*Id.* at 8.)

This argument is unavailing. The engineers operated only under the assumption that the ladder collapsed while someone was standing on it. An assumption that the ladder collapsed during service does not necessarily require a conclusion that the collapse was a result of a component failure while someone was standing on the ladder and not a result of a human body falling onto the ladder. Defendant submits that because neither of the experts read the deposition transcripts of Plaintiff or her brother, the experts *therefore* did not know that she fell on top of the ladder and, because of this, operated on the faulty assumption that the damage to the ladder was due solely to structural failure. This conclusion is not irresistible. Dr. Ritter reasoned that he thought the ladder's collapse was a result of structural failure due in part to the fact that he knew that Curran landed on her back, which is uncontroverted. (Ritter Depo. at 23.) And Dr. Mohr indicates that, even assuming the damage to the ladder resulted from Curran falling on top of it, the fall would not explain all of the damage to the ladder. (Mohr Depo. at 92.)

Defendant's next argument is that because Ritter admitted that the damage to the ladder could have been sustained on a new ladder without a pre-existing crack, Ritter should be precluded from arguing that the pre-existing crack was a prerequisite to the ladder's failure. (Doc. 58 at 11.) Defendant argues that the Court should exclude the testimony of the experts because they failed to consider alternate causes. (*Id.*) The Court declines to do so. Positing alternate causes possibly not considered by the experts is fodder for cross-examination, not reason to exclude. The Court's role, after all, "is not intended to serve as a replacement for the

6

adversary system: 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Buck v. Ford Motor Co.*, 810 F. Supp. 2d 815, 822-23 (N.D. Ohio 2011) (citing *U.S. v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir.1996) (quoting *Daubert*, 509 U.S. at 597)).

2. *Reliable Principles and Methods Generally*

Defendant next argues that the experts used unreliable principles and methods in reaching their conclusion. Defendant notes that the experts conducted few inspections and no destructive tests of the subject ladder before the report. (Doc. 58 12.) Defendant offers the following colloquy to prove that the experts' methodology was impermissibly flawed:

> Q All right. But in this case, because they're broken out and they've been broken out for some period of time, it appears from that photograph, in your opinion, they're poorly connected, and to you, they suggest a dry region or a region of poor wet out, correct?
> A Yes.
> Q Okay. Now, this part of this -- this
> report, this is your handy work, correct?
> A Yes.
> Q This is the material side, right?
> A Uh-huh, yes.
> Q Okay. Now, as far as coming to that opinion, that opinion is based upon your visual observation, correct?
> A Yes.
> Q And it is based upon your visual observation of the zone shown in Figure 10 alone, correct?
> A Yes.
> Q All right. Now, in -- you use the words "suggesting a dry region or region of poor wet out." I take it that's because just looking at something is not a scientific method of determining whether or not there was a dry region or region of poor wet out?
> A Yes, that's right.
> [Ritter Depo. p. 53, l. 14-25; p. 54, l. 1-12] (Emphasis added.).

(Doc. 58 12-13.)

The above proves nothing amiss about the expert's method, either generally or specifically. It proves that the scientist was uncomfortable coming to the conclusion that there

7

was a dry region simply by visual inspection. It could demonstrate the expert's care in not proffering conclusions based on insufficient evidence, which could serve to *enhance* that expert's credibility.

> Defendant then points to the following exchange from the deposition of Dr. Mohr:
>
> Q Now, since the ladder has been delivered to you, has EWI done any destructive testing on the subject ladder?
> A No.
> Q Since the ladder has been delivered to EWI, has it done any nondestructive testing of the ladder?
> A No.
> [Ritter Depo. at 28, 1. 21-25; p. 29, 1. 1-2].

(Doc. 58 at 13.)

Including the above without context is either an oversight or outright misrepresentation because the very next part of the deposition reads:

> Q Did EWI do any hardness testing of the ladder?
> A Yes.
> Q I would call that nondestructive testing.
> A Oh, all right.

(Ritter Depo. 29.)

The experts did conduct nondestructive testing, namely a hardness test of the fiberglass in the ladder, and they did so at multiple points on the ladder, including the left and right rear rails. (*Id.* 29-30.)

Defendant cites *Buck v. Ford Motor Company* to stand for the proposition that the experts' failure to conduct destructive testing on the ladder is reason enough for exclusion. (Doc. 58 12.) Defendant's reading of the *Buck* holding is skewed, at best. The expert testimony in *Buck* involved the hypothesized interplay between electromagnetic interference ("EMI") and an automobile's speed control system. 810 F. Supp. 2d at 821. It was (and is) contested that such a phenomenon exists, i.e. it is unknown whether EMI can possibly affect the auto's components. It

is not contested that a ladder's components can fail and that such failure can cause a ladder to collapse. The dispute here does not concern the soundness of the physics or materials science of the ladder's collapse, merely the collapse's precipitating event.

In fact, Defendant offers no evidence that the underlying science of the expert testimony is faulty, and Defendant has expressed no concern about the methodology of the experts or the rigor of the science on which the experts relied. Rather, Defendant alleges that the experts' failure to conduct destructive testing on the ladder renders the experts' testimony inadmissible. As discussed in pt. 1, *supra*, this is a matter for proof at trial, not a reason to exclude their testimony.

### 3. *Reliable Principles and Methods Specifically*

Defendant argues that the experts could not have reliably applied principles and methods to the fact of this case because the experts "were relying on an inaccurate representation of facts, and did not invoke any reliable principles or methods." This is the summation of subparts (1) and (2) above with no new information, argument, or citation to any legal authority. Defendant reiterates its argument that the experts began their endeavor with a faulty assumption, a matter in dispute, and Defendant posits again that the experts failed to consider an alternative cause of the damage which, as discussed above, goes to weight, not to admissibility. These arguments are not persuasive. Accordingly, the Court **DENIES** Defendant's request to exclude Plaintiff's expert testimony. The Court also **DENIES** Defendant's request in the alternative to hold a hearing to address the question, finding that the briefing and oral argument were sufficient for the Court to rule on this motion. Consistent with Sixth Circuit guidance from *United States v. Johnson*, the Court will not anoint Drs. Mohr or Ritter "expert" witnesses in front of the jury, rather the Court will refer to them as opinion witnesses. 488 F.3d 690, 698 (2007).

## II. MOTION FOR SUMMARY JUDGMENT

### A. Standard

Federal Rule of Civil Procedure 56(a) provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

The necessary inquiry for this Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251-52). In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party. *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013). The court reviewing a summary judgment motion need not search the record in an effort to establish the lack of genuinely disputed material facts. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). Rather, the burden is on the nonmoving party to present affirmative evidence to defeat a properly supported motion, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.1989) (citation omitted), and to designate specific facts that are in dispute. *Anderson*, 477 U.S. at 250 (citation omitted); *Guarino*, 980 F.2d at 405.

To survive the motion, the nonmoving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The mere existence of a

scintilla of evidence in support of the opposing party's position is insufficient to survive the motion; there must be evidence on which the jury could reasonably find for the opposing party. *See Anderson*, 477 U.S. at 251 (citation omitted); *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992) (finding that the suggestion of a mere possibility of a factual dispute is insufficient to defeat a motion for summary judgment) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)).

### B. Analysis

Parties dispute whether Plaintiff has introduced enough circumstantial evidence to submit to a jury whether the requirements of subsections (1) and (2) of Ohio Revised Code § 2307.71, Ohio's Product Liability Act ("OPLA"), are met. Subsection (1) provides that Plaintiff must prove by a preponderance of the evidence that the Werner Company ladder at issue "was defective in manufacture or construction as described in section 2307.74 of the Revised Code," which provides that

> [a] product is defective in manufacture or construction if, when it left the control of its manufacturer, it deviated in a material way from the design specifications, formula, or performance standards of the manufacturer, or from otherwise identical units manufactured to the same design specifications, formula, or performance standards. A product may be defective in manufacture or construction as described in this section even though its manufacturer exercised all possible care in its manufacture or construction.

Subsection (2) provides that Plaintiff must prove by a preponderance of the evidence that the "defective aspect of the manufacturer's product in question . . . was a proximate cause of" Plaintiff's harm.

Defendant contends that Ohio law demands the Court conduct a two-step analysis before admitting circumstantial evidence, arguing that Plaintiff must "offer circumstantial evidence that

11

establishes, by a preponderance of the circumstantial evidence, that the loss was caused by a defect and not other possibilities." (Reply 4.) Defendant submits that the Court determine:

> (1) whether circumstantial evidence is admissible in this matter, i.e. [whether] the circumstantial evidence establish[es], by a preponderance of the circumstantial evidence, that the accident was caused by a defect and not other causes . . . and then (2), if the Court decides that circumstantial evidence is admissible, then the court should apply that circumstantial evidence to the summary judgment standard, i.e. whether the circumstantial evidence creates a genuine issue of material fact.

(Reply 5.)

Defendant's proposed test comes from misunderstandings of *State Farm Fire and Casualty Company v. Chrysler Corporation*, 37 Ohio St.3d 1 (1988), and *Yanovich v. Zimmer Austin, Incorporated*, 255 F. App'x 957 (6th Cir. 2007). *State Farm* provides:

> Product defects may be proven by direct or circumstantial evidence. Where direct evidence is unavailable, a defect in a manufactured product existing at the time the product left the manufacturer may be proven by circumstantial evidence where a preponderance of that evidence establishes that the loss was caused by a defect and not other possibilities, although not all other possibilities need be eliminated.

37 Ohio St.3d at 6 (citations omitted).

The above quote merely emphasizes that circumstantial evidence is held to the same standard at trial as direct evidence, which is that Plaintiff's case must be proven by a preponderance of the evidence, whether direct or circumstantial. Defendant cites no case law supporting its interpretation that *State Farm* requires the Court to conduct its proffered two-step analysis, and the Court sees no reason to make that deductive leap. Indeed the Court sees good reason not to do so—determining what weight to give evidence is the province of the jury or other fact finder, not the judge at the summary judgment stage of litigation. *See White v. Westfall*, 183 Ohio App.3d 807, 810-11 ("[O]n summary judgment, a court may not weigh the evidence.").

12

As to *Yanovich*, that court did not promote Defendant's proposed two-part preponderance analysis. It merely held that "before a plaintiff can rely on circumstantial evidence . . . the plaintiff must at least present evidence to show why the defendant's product should not be among the possible causes to be eliminated." 255 F. App'x at 966. The court went on to clarify that in order to rely on circumstantial evidence, the plaintiff "must introduce other evidence that either (1) eliminates some of the other possible causes of the injury or (2) establishes that a defect-free product would not have performed the way it did." *Id.* (emphasis omitted). This goes to any plaintiff's usual burden of raising a genuine issue of material fact; it does not support Defendant's proposed preponderance test.

Plaintiff has met her burden by introducing evidence to rule out other causes, e.g. that the ladder had not been used before, and that she was using the ladder properly prior to the accident. An analogous Sixth Circuit case, *Najib v. Meridian Medical Technologies, Incorporated*, provides guidance. 179 F. App'x 257 (6th Cir. 2006). In *Najib*, the plaintiff sued the makers of the EpiPen, a device that releases epinephrine to assist persons suffering anaphylactic shock from extreme allergies. *Id.* at 258. The district court granted summary judgment to the makers of the EpiPen. *Id.* On appeal, the Sixth Circuit reversed, finding that the plaintiff

> presented testimony that excludes other possible causes for the EpiPen's malfunction. He and his fiancee both testified that the EpiPen in question was new, had not previously been removed from its box, and that they knew how to remove the cap. Therefore, we believe that Najib's case is more similar to the situation described by the Ohio Court of Appeals in *Hickey v. Otis Elevator Co.* in which proof of causation by circumstantial evidence was held to be appropriate for jury determination. 840 N.E.2d 637, 641–42, 163 Ohio App.3d 765, 770–71 (Ohio Ct.App.2005). In that case, the Court of Appeals distinguished between cases in which the issue of causation is complicated by virtue of the nature of the product at issue (*Hickey* dealt with a malfunctioning elevator) and those in which a jury could reasonably infer causation from the circumstantial evidence because the product itself was relatively simple (citing *Porter v. Gibson Greetings, Inc.,* 1997 WL 761851 (Ohio App. 2 Dist.1997), which dealt with an ordinary balloon).

13

>*Id.* Therefore, we believe that the district court's opinion inappropriately granted summary judgment on the issue of defect where an issue of material fact exists.

*Id.* at 261.

And what product could be simpler than a ladder? Plaintiff offers another analogous case, this one also involving a ladder. In *Caserta v. Holland Ladder and Manufacturing*, the Ohio Court of Appeals reversed a directed verdict in favor of the defendant where the plaintiff introduced evidence that he purchased the ladder only a year prior, and that he did not abuse the ladder at any time prior to the time it collapsed. 2000 Ohio App. LEXIS 2927, No. 99AP-338 (Ohio Ct. App. June 30, 2000). There the court held that "[w]hen deciding on motions for a directed verdict, the trial court is not permitted to weigh the evidence or the credibility of witnesses but, rather, must determine if there is substantial probative evidence to support the plaintiff's claims." *Id.* at *2.

Defendant distinguishes *Najib* on the grounds that: (1) the product at issue, the EpiPen, was destroyed; and (2) the plaintiff presented testimony that excluded other possible causes for the accident. In this case, Defendant submits that: (1) the ladder was not destroyed and could have been tested and compared to an exemplar ladder by the experts; and (2) Plaintiff has failed to offer any evidence that excludes other possible causes for her falling off the ladder. (Reply 8-9.) The first distinction is specious, and the second not true. As to the first, the plaintiff in *Najib* did not have access to the product to do any testing whatsoever so—*a fortiori*—the investigation that Plaintiff's experts conducted on the ladder provides even more evidence to submit to a fact finder than plaintiff in *Najib*. As to the second, the Plaintiff has offered evidence excluding other causes, including the condition of the ladder and her proper use of it.

Defendant would distinguish *Caserta* by arguing that the plaintiff there alleged a design defect, and not a manufacturing defect. Defendant cites no authority as to why this distinction is consequential.

Thus, although Defendant argues that Plaintiff "offers very little circumstantial evidence to substantiate her position," (Reply 5), Sixth Circuit and Ohio case law counsel that she has offered enough. Accordingly, the Court **DENIES** Defendant's motion for summary judgment.

## CONCLUSION

Defendant's July 1, 2015 **Motions** for Summary Judgment (Doc. 59) and to Exclude Expert Testimony of Doctors George Ritter and William Mohr (Doc. 58) are **both DENIED**.

**IT IS SO ORDERED**.

s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATE: March 21, 2016**